January 5, 2024

**VIA CM/ECF**
United States Magistrate Judge Steven Locke
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

**RE:** Letter Motion for Approval of Settlement pursuant to:
*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)

**RE:** Castro v. My Hero Deli, Inc., et.al.
Case No. 23-CV-06398 (SIL)

Dear Judge Locke:

This joint letter is submitted by counsel on behalf of Plaintiff Elvin Castro, and My Hero Deli, Inc., Dominick Farese, and Anthony Farese (each singularly hereinafter referred to as the "Defendant," and collectively hereinafter referred to as the "Defendants") ("Plaintiff" and "Defendants" collectively hereinafter being referred to as the "Parties") in the above-referenced action. We write to inform the Court that the Parties have agreed to settle this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. The Parties respectfully request that the Court review and approve the written settlement agreement which is appended hereto as **Exhibit "A"**. See *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

<u>The Settlement That Was Reached By The Parties</u>

On August 27, 2023, Plaintiff filed his Summons and Complaint in this action alleging that Defendants engaged in improper practices in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA") and the New York State Labor Law § 190, *et. seq.*, (the "NYLL") on behalf of himself and "all other persons similarly situated" (the "Complaint"). Specifically, the Complaint alleges: (1) failure to pay minimum wages in violation of the FLSA and NYLL; (2) failure to pay overtime premium wages in violation of the FLSA and NYLL; (3) failure to pay spread of hours wages as required under NYLL and (4) failure to furnish required notices of wage and hour information in violation of the NYLL and New York State Wage Theft Prevention Act.

Plaintiff alleges that Defendant My Hero Deli, Inc. is the entity owned by the individual Defendants Dominick and Anthony Farese, which operates the delicatessen located at 1005 Jerusalem Avenue, North Merrick, New York. Plaintiff was a deli clerk at the My Hero Deli, Inc. from January 2, 2010 to August 12, 2023. Plaintiff alleges that Defendants Dominick and Anthony Farese are the owners and principals of Defendant My Hero Deli, Inc., who exercise operational control over My Hero Deli, Inc. and the power to fire and hire employees, control employees schedules, determine the rate and method of compensation of employees, etc. such that they would be personally liable in this action under, *inter alia*, the Fair Labor Standards Act.

Plaintiff alleges that Defendant My Hero Deli, Inc. paid Plaintiff by cash and failed to remit

proper payroll taxes to all applicable taxing authorities for payroll taxes on the cash payments made by Defendant My Hero Deli, Inc. to Plaintiff, depriving Plaintiff of proper credits for payroll taxes for the applicable taxing authorities.

On September 29, 2023, Defendants filed their Answer and Affirmative Defenses (the "Answer" - Doc. No. 12) to the Complaint, denying that they had failed to pay minimum wage to Plaintiff for all hours worked, denying that they had failed to pay overtime premiums to Plaintiff for all hours worked over forty in a given work week, denying that they had failed to provide accurate pay statements, and asserting that Plaintiff had fraudulently misrepresented the number of hours that he worked for Defendants. Defendants further deny that they failed to remit proper payroll taxes to all applicable taxing authorities thereby depriving Plaintiff of proper credits for payroll taxes for the applicable taxing authorities.

The Parties reached an agreement to settle the action for One Hundred Ten Thousand Dollars and Zero Cents ($110,000.00) (the "Settlement Amount"). The Settlement Amount, currently being held in trust by Defendants' counsel subject to further Order of this Court, includes monies that will be paid to Plaintiff's attorneys pursuant to the reasonable wage and hour contingent fee arrangement entered into by and between Plaintiff and his counsel which is one third (1/3rd) of the Settlement Amount and which is further detailed in this application.

The Parties agree that the terms and conditions of the settlement are fair, reasonable, and in the best interest of the Parties. The Parties have entered into a settlement that reflects a reasonable compromise of the Parties' disputed issues and any actual or potential claims. In addition, the Parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation.

<u>This Court Should Find That the Settlement is Fair and Reasonable</u>

A FLSA settlement should receive judicial approval where it is "fair and reasonable." See *Barrientos v. Sweet Hills Stables, Inc.*, 2016 U.S. Dist. Lexis 21296 (E.D.N.Y. 2016) citing Cheeks, supra. Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-0529-WS-B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-CV-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Infix Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dept of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1354 (11th Cir. 1982)).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's length

2

negotiations with the great assistance of James Brown, Esq., the mediator engaged by the Parties. The Parties are represented by counsel who are experienced in wage and hour law and who advised their respective clients on the benefits and risks of continued litigation, including depositions of all parties, paper discovery, and anticipated motion practice. There was no undue influence to compel a settlement exercised over Plaintiff since Plaintiff no longer works for or interacts with any Defendants.

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012).

### Plaintiff's Range of Possible Recovery

The proposed Settlement Amount is substantial and is within the range of reasonableness of recovery when compared to the various possibilities and probabilities of recovery. The total recovery to the Plaintiff and their counsel is $110,000.00. Since Defendants' have no formal time records to prove the hours that Plaintiff allegedly worked, Plaintiff's damages would have needed to be proven and disproven by testimony of the Parties and witnesses. Based on the allegations in the Complaint regarding hours worked by the Plaintiff, Plaintiff's potential damages for unpaid wages plus interest was approximately $131,749.55, exclusive of liquidated damages, attorneys' fees, and other notice violation penalties. However, if the informal documentation and both party and third-party testimony proffered by Defendants during mediation was credited by the ultimate trier of fact in this action, Plaintiff faced the possibility recovering less than $50,000 after trial.

This Settlement Amount is significant considering the inherent risks of litigation. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particular sum." *Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal citations and quotations omitted). The settlement in the above referenced matter is substantial and represents significant recovery in light of the evidence and testimony that might be adduced at trial. Thus, the Settlement and General Release Agreement should be approved by the Court.

Plaintiff claimed that during his respective periods of employment with the Defendants, he was not compensated for all of his hours worked and was not compensated at the overtime rate for all hours worked.

Plaintiff claims that he was paid minimum wages by Defendants and regularly worked in excess of 40 hours per week, but was not lawfully compensated for all of the hours that he worked, as well as for overtime hours for which he was not paid. Plaintiff did not work overtime from November 1, 2022 through August 12, 2023 but nevertheless claims he was not lawfully compensated for all of the hours that he worked. Plaintiff claims he initially performed his regular work six (6) days per week for 11 hours per day. At the beginning of 2020, Plaintiff claims he

began working only five (5) days per week for 11 hours per day, which was then reduced to 10 hours per day and then, most recently, working only seven (7) hours per day beginning on November 1, 2022. Beginning on January 31, 2023 through the end of his employment with Defendants, Plaintiff only worked four (4) days per week. As set forth in the Answer and in their submissions to the Court-appointed mediator, Defendants vehemently dispute Plaintiff's allegations of hours worked and maintain that, even in the absence of formal timeclock records, they would be able to proffer credible evidence at trial sufficient to challenge Plaintiff's credibility under the doctrine of *falsus in uno, falsus in omnibus.*

The Complaint further alleges that Defendants failed to pay Plaintiff in accordance with the FLSA, 29 U.S.C. §§ 201 *et seq*. and the NYLL. Further, Plaintiff also sought statutory damages based on Defendants' alleged failure to provide specific wage notices and earning statements that NYLL requires under the Wage Theft Prevention Act.

<u>Extent That the Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses in Establishing Their Respective Claims and Defenses and The Seriousness of the Litigation Risks Faced by the Parties</u>

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff...against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

Defendants disputed the total number of days and hours that Plaintiff worked, as well as the wages paid to the Plaintiff, which would require extensive discovery in this case. Additionally, given the rising costs of operating a small business such as a delicatessen, there are likely to be debts that Defendants owe to other entities in the future which could prevent the Defendants from having the assets and ability to compensate Plaintiff in any meaningful way, Plaintiff was concerned not only about proceeding to trial, and the possibility that Defendants would appeal an adverse judgment, thereby lengthening the litigation further, but also of the Defendants filing for bankruptcy protection which could delay receipt of any monies by the Plaintiff and the additional judgments which could be entered against Defendants having priority over any award which could be obtained by Plaintiff against Defendants in the future at trial.

Therefore, given the defenses and practical considerations asserted by the Defendants, a settlement of $110,000.00, is a fair and reasonable settlement resulting from an arms-length negotiation between experienced counsel and with the help of a highly qualified and experienced mediator on this Court's roster of mediators in this Court's ADR Program.

In light of these factors, the Settlement Agreement represents a reasonable compromise of the bona fide dispute in this matter. While Plaintiff's counsel anticipates favorable outcomes at trial and appeal, the nature of jury trial and appellate practice is inherently uncertain and lengthy. The settlement eliminates these risks and ensures that the Plaintiff will receive most of his due compensation.

Moreover, in Plaintiff's counsel's assessment, the settlement represents a significant percentage of the recovery that Plaintiff would have achieved had he prevailed on at least his strongest plausible claims. Weighing the benefits of an almost immediate, guaranteed, lump sum payment to the Plaintiff against the risks and burdens associated with proceeding with a lengthy litigation, the settlement is reasonable and these factors weigh in favor of approval.

### Attorney's Fees

Under Plaintiff's professional services-contingency fee agreement with Plaintiff's counsel, Plaintiff's counsel is to receive one-third of any recovery and reimbursement for all expenses incurred in this case. The settlement agreement provides that Plaintiff's counsel will receive $37,894.27 in attorney's fees and reimbursement of costs and filing fees.

During the pendency of this action, the Parties exchanged documents and analyzed the claims and defenses at issue extensively. Plaintiff's attorneys expended significant amounts of time in preparing and commencing this action with the filing of the Summons and Complaint, having communications with the mediator and Defendants' counsel, participating in negotiations with the mediator and Defendants' counsel in furtherance of the mediation and settlement of the action in its entirety, engaged in communications with this Court and worked with Plaintiff to ascertain and compute the damages suffered by Plaintiff.

A Declaration of Plaintiff's counsel Gary Rosen, Esq. in support of this instant motion with accompanying billing records is annexed hereto as **Exhibit "B"**.

### Whether the Settlement Agreement is the Product of Arm's-Length Bargaining

A "presumption of fairness, adequacy and reasonableness may attach to a...settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Slobodan Kric v. Major Auto Cos.*, 2015 U.S. Dist. Lexis 171730 (E.D.N.Y. 2015), citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in negotiations over the course of the litigation of this case and during mediation on November 27, 2023, in order to achieve this settlement. At all times, the Parties' negotiations were on an arm's length basis. Because the settlement involves clear and bona fide wage disputes in contested litigation and were resolved through an arm's length settlement process, it should be granted judicial approval.

### Possibility of Fraud or Collusion

"Absent fraud or collision, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were, with the substantial assistance of a Court-appointed neutral, able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length, and the Parties were duly advised of each incremental advancement made in the settlement negotiations.

As there was no fraud upon the Parties or collusion between counsel, the settlement should be approved.

## I. Conclusion

For the reasons set forth herein, the Parties respectfully request that this Court approve the settlement as reflected in the Settlement and General Release Agreement.

Respectfully submitted,

| | |
|---|---|
| /s/ Jared Rosen | /s/ David Mahoney |
| Jared Rosen, Esq. | David Joseph Mahoney, Esq. |
| Rosen Law LLC | RIMON P.C. |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 216 Lakeville Road | 100 Jericho Quadrangle, Suite 300 |
| Great Neck, New York 11020 | Jericho, New York 11753 |
| (516) 437-3400 | (516) 479-6337 |
| jared@rosenlawllc.com | david.mahoney@rimonlaw.com |